JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

IYANA FERGUSON

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Olugbenga O. Abiona, ABIONA LAW PLLC, 2156250330
P. O. Box 3326, Cherry Hill, NJ 08034

## DEFENDANTS

City of Philadelphia, Deputy Chief Scott Sladek, EMS Chief Martin McCall and Lt. George Cuthbert

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability | [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine | Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product | Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | Act | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability | [ ] 380 Other Personal | [ ] 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | Property Damage | Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury - | Product Liability | [ ] 751 Family and Medical | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ | Sentence | | or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | [ ] 462 Naturalization Application | | Agency Decision |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other | [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Civil Rights Act, 42 U.S.C. Section 1983 and Section 1981

Brief description of cause:
Defendants subjected Plaintiff to race and gender harassment and hostile work environment and retaliation

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE

DOCKET NUMBER

DATE
08/14/2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Philadelphia, PA _____

Address of Defendant: _____ City Hall, Philadelphia, PA 19102 _____

Place of Accident, Incident or Transaction: _____ Philadelphia _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 8/14/2023 _____ _____ 57026

*Must sign here*
*Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.      Federal Question Cases:**

☐  1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐  2.  FELA
☐  3.  Jones Act-Personal Injury
☐  4.  Antitrust
☐  5.  Patent
☐  6.  Labor-Management Relations
☑  7.  Civil Rights
☐  8.  Habeas Corpus
☐  9.  Securities Act(s) Cases
☐  10. Social Security Review Cases
☐  11. All other Federal Question Cases
       *(Please specify):* _____

**B.      Diversity Jurisdiction Cases:**

☐  1.  Insurance Contract and Other Contracts
☐  2.  Airplane Personal Injury
☐  3.  Assault, Defamation
☐  4.  Marine Personal Injury
☐  5.  Motor Vehicle Personal Injury
☐  6.  Other Personal Injury *(Please specify):* _____
☐  7.  Products Liability
☐  8.  Products Liability – Asbestos
☐  9.  All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Olugbenga O. Abiona, Esquire _____, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 8/14/2023 _____ _____ 57026

*Sign here if applicable*
*Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IYANA FERGUSON                                            :
                                                         :        CIVIL ACTION
                                                         :        No.:
                              Plaintiff                  :
              vs.                                        :
CITY OF PHILADELPHIA                                     :
DEPUTY CHIEF SCOTT SLADEK,                               :
LT. GEORGE CUTHBERT, and                                 :
EMS CHIEF MARTIN MCCAll                                  :
                              Defendants                 :

<u>**COMPLAINT AND JURY TRIAL DEMAND**</u>

### I.        INTRODUCTION

1.      This action for monetary damages and other appropriate relief is brought by Plaintiff to redress violations by Defendants City of Philadelphia (hereinafter "City"), Deputy Chief Scott Sladek, and Lt. George Cuthbert, rights secured to Plaintiff by the laws of the United States of America and the Commonwealth of Pennsylvania.

2.      This action arises under the Civil Rights Act 42 U.S.C. §1981, which prohibits discrimination on the bases of race, and retaliation by employers and any person because of complaints of race discrimination, and is brought by Plaintiff to redress arbitrary, malicious, reckless, improper, unlawful, willful, and deliberate discrimination and retaliation by Defendants.

3.      This action also arises under the PHRA which prohibits discrimination on the bases of race and religion, and retaliation by employers and any person because of complaints of race and or gender discrimination, and is brought by Plaintiff to redress arbitrary, malicious, reckless, improper, unlawful, willful and deliberate discrimination and retaliation by Defendants. Plaintiff

has exhausted her administrative remedies under PHRA as it has been over one year since she dual filed her administrative complaints with the EEOC and PHRC.

4.      This action also arises under the Civil Rights Act 42 U.S.C. Section 1983 for the violation of Plaintiff's Constitutional and federal law rights by Defendants, acting under color of state law.

5.      On or about September 23, 2021, Plaintiff dual filled her Charge of Discrimination against Defendants with the EEOC and PHRC .  On or about October 6, 2022, Plaintiff dual filed her Amended Charge of Discrimination against Defendants under Title VII and the PHRA; Charge No. 530-2021-05269.

6.      On June 28, 2023, the EEOC entered a Determination of probable cause against the City of Philadelphia finding that the City violated Plaintiff's rights under Title VII of the Civil Rights Act. violated Title VII.  The EEOC determined that "Evidence of record indicates that between in or around May 2021 and continuing until the present, the Charging Party has been subjected to harassment, different terms and conditions of employment, and subjected to disparate assignments based on her race (Black), color, sex (Female) and in retaliation for engaging in a protected activity…" See Exhibit A attached hereto. Conciliation of Plaintiff's claims against the City by the EEOC has failed, and Plaintiff has requested that she be issued a right to sue the City for her Title VII claims, which the EEOC has forwarded to the United States Department of Justice for decision.  Upon receipt of her right to sue notice from the United States Department of Justice, Plaintiff will amend her complaint against the City to add her Title VII claims.

**II.                           JURISDICTION**

7.      Federal court jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1343.  The Court also has supplemental jurisdiction over Plaintiff's state law claims.

## III.             VENUE

8.      Venue is proper pursuant to 28 U.S.C. § 1391, as the incidents alleged herein occurred within the Eastern District of Pennsylvania.

## IV.             PARTIES

9.      Plaintiff Iyana Ferguson is an adult citizen of the United States, who resides in the City of Philadelphia.

10.      Plaintiff is black and African American by race and a female.

11.      Defendant City of Philadelphia, (hereinafter "City") is a municipality constituted under the laws of the Commonwealth of Pennsylvania with its offices located at City Hall, Philadelphia, Pennsylvania.

12.      Individual Defendants, Chief Martin McCall, Deputy Chief Scott Sladek and Lt. George Cuthbert are supervisory Fire Officers who at all relevant place and time in this matter were employed with the City of Philadelphia Fire Department. These individual defendants are being sued in their individual capacities.

13.      At all times material to this case all the individual Defendants listed above were acting under color of state law.

14.      On or about May 5, 2015, Plaintiff started working for the City as an EMT, assigned to Medic 28, Engine 19, located at 300 East Chelton Avenue, Philadelphia PA.

15.      On or about May 31, 2021, Plaintiff was sitting at Einstein hospital in the truck. ES10, Lt. Donahue approached Plaintiff and stated that she received a phone call about Plaintiff's hair.

16.      Plaintiff told Lt. Donahue that she just got braids done and they hurt and that's why she had a ponytail in but didn't have it in a bun. Plaintiff then put her hair in a bun. Lt. Donahue was satisfied with Plaintiff putting her hair in a bun and left.

17.     Thereafter, Medic 28 received a message over the CAD (computer system) stating to go out of service to the station and they drove back to the station.

18.     After Plaintiff got back to the station, Deputy Chief Scott Sladek (W/M) brought Plaintiff into the office around 10pm to discuss Directive 13; Plaintiff's Captain level supervisor Capt. McDaviett was also present in Sladek's office but did not address Plaintiff.

19.     It was unusual for a Deputy Chief supervisor to verbally reprimand an employee. Sladek should have reported any issue to Plaintiff's first level supervisor, Capt. McDaviett, to address the issue with Plaintiff.

20.     Defendant Sladek asked Plaintiff if she was aware of the directive . Plaintiff responded that she was not. Once Sladek defined the directive and mentioned the length of Plaintiff's braids, Plaintiff indicated she was aware of the policy and explained why her braids were below the required limit. Defendant Sladek asked why he had to keep bringing this to Plaintiff's attention. Plaintiff told him that day was the first time she had heard of this – this was not a repeat incident that occurred on another date.

21.     During the conversation Sladek became angry asking Plaintiff, and then threatened Plaintiff stating that Plaintiff was on "thin ice" and that if Plaintiff had another violation she was "out of here." Sladek threatened to have Plaintiff's employment terminated.

22.     However, Directive 13 was not enforced at the firehouse by Defendants; other employees, mostly Caucasian males, were routinely dressed out of code in violation of Directive 13, for example –they wear hoodies, shorts and sneakers.  They routinely dress out of code both at the firehouse and out on calls, but were not reprimanded by Sladek.   But because Plaintiff is a black female she was threatened with a reprimand by Sladek.

23.     Plaintiff later learned that the very next day Sladek contacted Fire Paramedic Deputy Chief Jeremiah Laster and had Plaintiff transferred out of the fire house the entire next tour. This was harassment and disparate treatment of Plaintiff because of her race and gender.

24.     Plaintiff was being treated differently than the white and male employees in the firehouse house by Sladek.

25.     Plaintiff's next day on tour was June 5, 2021, Plaintiff came into work around 06:58 am. The men at the station stated that Sladek was sitting at the watch desk waiting for Plaintiff to come in, and as a result Plaintiff did not enter the station; she stayed outside.

26.     Lt. Anderson then walked outside and told Plaintiff that Sladek said Plaintiff's bun was too high on her head and her fire helmet couldn't fit on.   Lt. Anderson stated that Plaintiff needed to come back to his office showing him that her helmet can fit on.  Plaintiff was not wearing an helmet at the time, and helmets are only worn when responding to a fire scene.

27.     Plaintiff adjusted her bun and put it in a low bun. Lt. Anderson then stated that according to Sladek, he's still unsatisfied with Plaintiff's bun. He stated Plaintiff's bun is more than two inches thick and that's inexcusable per the protocol. Plaintiff asked Lt. Anderson if he wanted Plaintiff to cut her hair, he shrugged his shoulders. Lt. Anderson then stated that Deputy Chief Sladek called ES12, Lt. Dawn Jones, to come and speak to Plaintiff about her hair. Plaintiff asked Lt. Anderson why Lt. Jones was coming from a far distance and not Plaintiff's ES10 officer. Lt. Anderson stated he did not know. Plaintiff told Lt. Anderson that she wanted to wait for her union rep and the EAP before speaking with Lt. Dawn.

28.     When Lt. Dawn Jones arrived, and **Lt. Jones had a huge bun on the top of her head**.

29.     Lt. Jones is a white woman with long blonde hair.

30.     Lt. Jones walked into Deputy Chief Sladek's office and closed the door. Lt. Jones then came outside and asked Plaintiff if she could speak to her upstairs in the officer's office. Plaintiff stated she did not feel comfortable and would like to wait for her union rep.

31.     Once Ana (LNU) from the EAP came and Plaintiff's union rep came, they went into the office to discuss what happened. The union rep spoke to Deputy Chief Scott Sladek. The union rep then came back into the room with Plaintiff and stated that the Chief said as long as Plaintiff was in uniform, he will leave Plaintiff alone.  The union rep said off record the Chief said he is going to continue to come after Plaintiff.  Plaintiff told the union representative that the Chief had been harassing her and continues to harass her. About 15 minutes later Plaintiff asked to be excused and went home stressed. These supervisors never treated the Caucasian and male officers in this harassing manner.

32.     Lt. Jones was not told to adjust her huge bun so it would fit within her helmet, like Plaintiff was being harassed by Deputy Chief Sladek.

33.     On August 31, 2021, Plaintiff worked overtime at Medic 6 on the C platoon, located at 9839 Bustleton Avenue, Philadelphia and got to work around 4:50 pm.  Plaintiff was assigned 5 p.m. to 7 a.m.

34.     Plaintiff went into the station to the Engine Officer's office to report for duty and gave her payroll number and name for overtime to Lt. George Cuthbert (Caucasian male) Engine 62/C.

35.     Plaintiff walked back outside to her car and waited for the medic unit to return.

36.     Once the medic unit returned Plaintiff exited her vehicle and walked over to Medic 6. Plaintiff sat in the truck until they got a run. Medic 6 had about 3 runs on that shift.

37.     Around 11:30 pm Medic 6 was back at the station and Plaintiff was sitting in the truck and kept scratching her arm. She then got out of the truck and asked her partner FSP Selby to look at the back of her arm and see if there was anything there. He said he saw bites and red dots. Plaintiff walked back to the truck and **saw bed bugs** throughout her driver's side seat in the creases of the chair. FSP Selby said he was getting bitten by something too, but he didn't know it was bed bugs.

38.     Plaintiff then went inside the station and reported the incident to Lt. George Cuthbert. He came outside to look at the chair and he saw the bed bugs too. He went back inside to make a phone call. He came back outside and told Plaintiff to go to Jeanes Hospital to decontaminate.

39.     Plaintiff told Lt. Cuthbert that she was allergic to bed bugs and needed to go home because she had to take Benadryl and couldn't drive after taking the medication.

40.     Lt. Cuthbert replied, "Don't bring that shit from Engine 19 over here, you're going to Jeanes". Lt. Cuthbert had worked at Engine 19, Plaintiff's regular work location.

41.     Plaintiff repeated that she needed some medicine and could not drive once she took Benadryl.

42.     Lt. Cuthbert stated, "I don't give a fuck get it at the hospital."

43.     Plaintiff stated, "No, I need you to make a phone call because I cannot stay at work after I take Benadryl."

44.     Cuthbert replied, "**You little Cunt you're going to Jeanes hospital**."

45.     Plaintiff replied that she was not getting back in that truck with bed bugs that she was allergic to but needed to go home.

46.     Lt. George Cuthbert then walked into the station and then walked outside to the parking lot and called FSP Marvin Staton, M16/C.

47.     Plaintiff hysterically told FSP Staton what just happened.

48.     Lt. George Cuthbert came outside and yelled at Plaintiff stating, "**Come get the fucking phone now**."

49.     Plaintiff told him she was not coming inside because she was scared to walk over there with his aggressive behavior towards her.

50.     Lt. Cuthbert kept yelling at Plaintiff to come inside.  But, once Plaintiff started walking towards the front of the station, Lt. Cuthbert threw the phone at Plaintiff, hitting Plaintiff in her stomach, and Plaintiff tossed the phone back at him, and Cuthbert yelled, "**Oh you little cunt**" and walked back into the station.

51.     Plaintiff then said hello to the person on the phone and ES Lt. Manny Cartagena stated, "I'm on my way right now".

52.     Plaintiff went into the station and gave the firefighter at the watch desk the phone. Lt. George Cuthbert stated to Plaintiff, "**Get the fuck out of my station**."  Plaintiff responded, "No."

53.     Lt. Cuthbert stated, "**Get the fuck out of my station now, you little fat black cunt bitch**", and he ran towards Plaintiff with his hands up as if he was going to choke Plaintiff. The ladder officer grabbed Lt. Cuthbert and pushed him into his office.

54.     Plaintiff walked outside and called FSP Staton back crying hysterically, coughing, and vomiting. Staton advised Plaintiff to try to calm down. Plaintiff calmed down and walked back into the station to the Ladder officer's office.  Plaintiff explained to the Ladder Officer that she got bit by bed bugs, that she was allergic to them and needed to take Benadryl, and therefore could not stay at work and drive after taking Benadryl.

55.     Plaintiff asked the ladder officer why he couldn't call for additional help for Plaintiff when another Lt. just attacked her. The ladder officer just looked at Plaintiff but didn't say anything. Plaintiff walked away and walked towards the parking lot and started crying hysterically again; she began to have difficulty breathing.

56.     FSP Selby noticed CP having difficulty breathing and brought over an albuterol treatment for her asthma attack.

57.     While Plaintiff was taking the albuterol treatment Lt. Manny pulled up.

58.     Lt. Manny walked over to Plaintiff and explained to Plaintiff that she needed to go to the hospital for her breathing difficulty.

59.     Plaintiff told LT Manny that she really wanted to speak with the EAP, a union rep and a Chief about what just transpired.

60.     Plaintiff told Lt. Manny that this Engine Officer, Lt. Cuthbert used to harass her when he used to be at Engine 19.  ES Officer Lt. Manny suggested Plaintiff should go to the hospital and a Chief will come to the hospital. Plaintiff agreed and a medic unit came to the station and took Plaintiff to Nazareth Hospital Emergency Room .

61.     While in the hospital, the attending physician told Plaintiff that she was no longer wheezing and did not need another treatment. The doctor looked at Plaintiff's right arm and gave her Benadryl with a prescription to continue to use it every 4 hours until the swelling and hives went away.

62.     Plaintiff's mom, Catherine Muhammad, arrived at the hospital.

63.     Deputy Chief Jared Jacobson eventually arrived at the hospital and Plaintiff reported to Deputy Chief Jacobson the sexual and racial harassment and hostile work environment she was subjected to by Lt. Cuthbert.

64.     Another Chief arrived at the hospital and took Plaintiff's report.

65.     Plaintiff told this other Chief what happened and the harassment she had been going through at her station Engine 19, and complained of the ongoing harassment, retaliation, sexism and racism.

66.     After having conversations with the two Chiefs with her mother in a private room, Plaintiff was instructed to go home, and Plaintiff's mother took Plaintiff to her vehicle.

67.     Plaintiff was supposed to work overtime at Medic 10 night shift the next day on September 1, 2021, but it was canceled by the City, and her name was taken off QUOTAS; the scheduling system. Plaintiff found out about this from FSP Marvin Staton.

68.     Plaintiff **lost 12 hours of over-time on September 1, 2021, in retaliation for complaining of race and gender harassment and hostile work environment against her superior officers at Philadelphia Fire Department.**

69.     On September 23, 2021, FSP Staton called Plaintiff and told her Plaintiff was "detailed" to Medic 22, located at 1323 West Cambria Street, Philadelphia, PA 19132, from September 25-28, 2021.  This was not Plaintiff's regular work location and it was an inconvenient location for Plaintiff.  Plaintiff called ES14 (which is Scheduling) and talked to Capt. Stalling-Geter.

70.     Capt. Geter told Plaintiff, that ES1, Deputy Chief Laster told Geter that Plaintiff was detailed out of her regular station but didn't tell Plaintiff the reason for this "detail".

71.     Plaintiff then called her regular workstation and talked to Lt. Kevin Higgins, who told Plaintiff that ES3 and ES14 told him that they got a memo from ES1, Deputy Chief Laster detailing Plaintiff, but gave no reason for the detail.

72.     Meanwhile the City assigned another FSP from another station to work Plaintiff's regular tour at Medic 28 and paid that replacement over-time for working Plaintiff's tour at Medic 28.

73.     Plaintiff asserts that this involuntary detail of Plaintiff to another station for her September 25-28, 2021, tour was part of the continuing retaliatory harassment and hostile work environment Defendants have subjected her to since Plaintiff engaged in protected activity under Section 1981, Title VII and the PHRA by opposing and complaining about these supervisory officers' race and gender motivated harassment and hostile work environment.

74.     On September 27, 2021, Plaintiff filed her Charge of Discrimination against the City, and immediately thereafter, the City was notified by the EEOC of Plaintiff's claims.

75.     However, the retaliatory actions by the City and its officials did not stop but was escalated to false allegations of directive violations against Plaintiff with the intent to subject her to unwarranted disciplinary actions.

76.     On December 8, 2021, Deputy Chief Scott Sladek confronted Plaintiff with false allegations that on that same day at 7:00 p.m., Plaintiff was instructed by Capt. Kareem Brown to "square away" her hair bun, because it was allegedly still below her collar.

77.     This allegation by Deputy Chief Sladek was false.

78.     Sladek then alleged that about 20 minutes later he observed Plaintiff's hair still down and now extended below her "belt-line".

79.     Again, this was a false allegation by Sladek.

80.     Deputy Chief Scott Sladek was one of the officials Plaintiff had complained was subjecting her to race discriminatory harassment and hostile work environment in her original Charge of Discrimination filed on September 27, 2021.

81.     As a result of Sladek's continuous harassment and retaliatory actions, Plaintiff took two days of stress leave which resulted in loss wages.

82.     Sladek has continued these retaliatory actions by now bringing false charges against Plaintiff.

83.     On Wednesday, June 28, 2023, after coming off her June 27, 2023 night shift, Capt. Gary Taylor came outside to the sidewalk where Plaintiff was standing and talking to her partner Kevin Selby.

84.     Capt. Taylor told Plaintiff that Chief Scott Sladek wanted him to talk to Plaintiff about her wearing slippers.

85.     Plaintiff told Capt. Taylor that she was off duty, was on her way home and that's why she was in slippers.

86.     Capt. Taylor replied that he didn't care, and Plaintiff should come into his office.

87.     Capt. Taylor told Plaintiff that his instructions were from Chief Sladek and that he would write Plaintiff up for wearing slippers and being out of uniform.

88.     Plaintiff again told Capt. Taylor that she was off duty, and that no one in the station on duty was in proper uniform.

89.     Capt. Taylor repeated that Plaintiff should come into his office.  Plaintiff told him she didn't feel comfortable going into his office, that she was off duty, and she was tired of being harassed by Chief Sladek and management because she had filed a complaint of race and gender harassment against Chief Sladek.

90.     Capt. Taylor walked away.

91.     The racially motivated harassment and hostile work environment, and retaliation by Defendants continued despite Plaintiff complaining to the City about the persistent harassment of Plaintiff by Deputy Chief Sladek.

92.     Plaintiff requested that she should not be assigned to work under Deputy Chief Sladek's chain of command because of the ongoing harassment, hostile work environment and retaliation, but the City continued to assign Plaintiff to work under Deputy Chief Sladek's chain of command and the hostile work environment continued.

93.     On or about August 2, 2023, after completing her shift, Plaintiff submitted her patients' charts into the City's computer system as she was required to do.

94.     Plaintiff was off duty and on vacation from August 3, 2013 and returned to work August 12, 2023.

95.     When Plaintiff returned to work on August 12, 2023, she was contacted on her phone by ES10 Lt. Clement and told that she had five open charts that needed to be sent in. Lt. Clement told Plaintiff to send the charts in and then he would come to Engine 19 to talk to Plaintiff.

96.     Plaintiff told Lt. Clement that before she went off duty on August 2, 2023 the charts were finished and she had sent them in through the computer link, but she would send them in again.

97.     After Plaintiff got off the phone with Lt. Clement her Engine Officer, Lt. Michael Weigand contacted Plaintiff and told her that Lt. Clement was coming to Engine 19 with paperwork because Plaintiff was being written up for open charts. Plaintiff told Lt. Weigand that she had sent the charts in on August 2, 2023, and there must have been come internet connection issue if what she sent in did not go through, but when she sent them in on August 2, 2023, it appeared to her that it went through..

98.     Lt. Weigand told Plaintiff that he tried to let **Lt. Clement and Capt. Murphy** know that Plaintiff was on vacation, but they stated that EMS Chief McCall ordered that Plaintiff should be written up.

99.   Per the directives, officers are supposed to be verbally warned first before any disciplinary action. But, Plaintiff was not verbally warned, and I've never had to sign any paperwork stating she was verbally warned about this.

100.   Chief McCall had previously flirted with Plaintiff on many occasions in the past when he was a captain at the warehouse, asking Plaintiff for her phone number, asking to take Plaintiff out on a date, and Plaintiff had always turned him down. McCall was sexually harassing Plaintiff.

101.   Chief Marttin McCall is the head of Philadelphia Fire Department EMS and has been aware of Plaintiff's EEOC charge and proceedings before the EEOC, and also participated in an EEOC mediation on behalf of the Fire Department.

102.   This is continuous harassment and retaliation taken against Plaintiff by Defendants.

103.   This is also Plaintiff being subjected to sexual harassment because she turned down the sexual advances of Chief McCall.

104.   The City has failed to take remedial action against the individual Defendants' harassment and hostile work environment of the Plaintiff because of her race and gender and because she engaged in protected activities.

105.   The City acquiesced in and condoned the racial and gender motivated harassment and hostile work environment of Plaintiff by these supervisory Fire Officials; harassment and hostile work environment that has continued and is still continuing since May 31, 2021.

V.                        **STATEMENT OF CLAIMS**

**COUNT ONE- SECTION 1981 VIOLATION AND VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS VIA SECTION 1983 OF THE CIVIL RIGHTS ACT**

**Plaintiff v. Chief McCall, Deputy Chief Sladek and Lt. Cuthbert**

106.    Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 105 above as if same were fully set forth at length herein.

107.    The acts and conduct of Defendant Scott Sladek as stated above where he subjected Plaintiff to racially and gender motivated harassment and hostile work environment was a violation of Section 1981 of the Civil Rights Act and the 14th Amended of the United States Constitution relating to equal protection under the law.

108.    The acts and conduct of Defendant George Cuthbert as stated above where he subjected Plaintiff to racially and gender motivated harassment and hostile work environment was a violation of Section 1981 of the Civil Rights Act and the 14th Amended of the United States Constitution relating to equal protection under the law.

109.    The acts and conduct of Defendant McCall as stated above where he subjected Plaintiff to sexual harassment and hostile work environment was a violation of the 14th Amended of the United States Constitution relating to equal protection under the law.

110.    The acts and conducts of Defendants McCall, Sladek and Cuthbert as stated above where they subjected Plaintiff to racial and/or gender harassment and hostile work environment was a violation of Plaintiff's Constitutional rights under the Equal Protection Clause of the Fourteen Amendment by denying Plaintiff equal protection in her employment because of her race and/or gender, while acting under the color of state law.

111.    These claims are asserted against Chief McCall, Deputy Chief Sladek and Lt. Cuthbert in their individual capacities, through Section 1983 of the Civil Rights Act because they were acting under the color of state law when they engaged in these conducts and actions.

112.    As a direct and proximate result of the said discriminatory practices of Defendants McCall, Sladek and Cuthbert in violation of Section 1981 and Plaintiff's Constitutional rights, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, as well as mental anguish, emotional distress, humiliation, and damage to reputation.

## COUNT TWO – 42 U.S.C. §1983 VIOLATIONS – RETALIATION
### Plaintiff v. Chief McCall, Deputy Chief Sladek and Lt. Cuthbert

113.    Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 112 above as if the same were fully set forth at length herein.

114.    The acts and conducts of Chief McCall, Deputy Chief Sladek, and Lt. Cuthbert as stated above where Plaintiff was subjected to adverse actions by these individual Defendants after Plaintiff complained of and/or opposed race and gender motivated discrimination, were violations of the Civil Rights Act, 42 U.S.C. §1981 and Plaintiff's Constitutional rights, which are being asserted against these individual Defendants via Section 1983 of the Civil Rights Act.

115.    As a direct and proximate result of the said retaliatory practices of Chief McCall, Deputy Chief Sladek and Lt. Cuthbert, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, and interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT THREE – SECTION 1983 VIOLATION
## RACE AND GENDER DISCRIMINATION
## PLAINTIFF V. CITY OF PHILADELPHIA

116.    Plaintiff incorporates by reference all allegations alleged in paragraphs one 1 through 115 above as if same were fully set forth at length herein.

117.    Defendant City of Philadelphia violated Plaintiff's Constitutional rights under the Equal Protection Clause of the Fourteen Amendment by denying her equal protection in her employment because of her race and gender, while acting under the color of state law.

118.    The City subjected Plaintiff to race discrimination in violation of the Civil Rights Act, 42 USC Section 1981, while acting under color of state law.

119.    The acts and conducts of the Defendants as stated above where Plaintiff was subjected to race and gender harassment and hostile work environment in violation of Plaintiff's Constitutional rights of equal protection while acting under color of state law are violations of the Civil Rights Act 42 USC Section 1983.

120.    Plaintiff complained to the City through its Fire Commissioner about the race and gender discriminatory conducts of these individual Defendants, however, the City failed to take remedial action against these individual Defendant, but the harassment and hostile work environment against Plaintiff continued and persisted.

121.    The acts and conducts of the Defendants as stated above show that the City was deliberately indifferent to and acquiesced in the violations of Plaintiff's Constitutional rights to be free from race discrimination and rights under the Civil Rights Act, Section 1981.

122.    The acts and conduct of Defendants stated above demonstrate that the City has a policy, practice and/or custom of race and gender discriminatory practices.

17

123.     The City, through its Fire Commissioner also violated Plaintiff's Fourteenth Amendment rights by directing, participating in, and /or condoning the unlawful racial and gender motivated actions against Plaintiff by the Individual Defendants and other supervisory officials.

124.     The City, through its Fire Commissioner failed to properly train, supervise and discipline Defendants McCall, Sladek and Cuthbert, which led to the racial and gender harassment of Plaintiff by these individual Defendants.

125.     The acts and conducts of the City as stated above are violations of the Civil Rights Act 42 U.S. C. Section 1983.

126.     As a direct and proximate result of  the City's violation of the Civil Rights Act, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, and interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT FOUR – SECTION 1983 VIOLATION-RETALIATION
### PLAINTIFF V. CITY OF PHILADELPHIA

127.     Plaintiff incorporates by reference all allegations in paragraphs 1 through 126 above as if same were fully set forth at length herein.

128.     Plaintiff exercised her Constitutional rights by opposing Defendants' unlawful conducts, and complaining to authorities in the City's Fire department about been subjected to racial and gender discriminatory actions.

129.     After complaining to the City and the EEOC of been subjected to discriminatory conducts, Plaintiff was subjected to retaliatory actions by Defendants for engaging in protected activities under the Constitution and under a federal law, the Civil Rights Act, Section 1981.

130.     The acts and conducts of the City through its Fire Department under Fire Commissioner as stated above where Plaintiff was subjected to adverse employment actions after complaining

of and/or opposing race and gender discrimination are violations of the Civil Rights Act 42 U.S.
C. Section 1983.

131.    The City was deliberately indifferent to the violations of Plaintiff's Constitutional rights
and rights under a federal statute to be free from retaliation.

132.    The City has a policy, practice and custom of retaliating against its employees for
complaining about race and/or gender discriminatory practices.

133.    The City violated Plaintiff's First Amendment rights by directing, participating in, and /or
condoning the unlawful retaliatory actions against Plaintiff.

134.    The acts and conducts of the City as stated above are violations of the Civil Rights Act 42
U.S. C. Section 1983.

135.    As a direct and proximate result of said violation of the Civil Rights Act, Plaintiff has
sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back
pay, front pay, and interest due therein as well as mental anguish, emotional distress,
humiliation, and damages to reputation.

## COUNT FIVE- PHRA VIOLATION
## RACE AND GENDER DISCRIMINATION
## PLAINTIFF V. ALL DEFENDANTS

136.    Plaintiff incorporates by reference all allegations in paragraphs 1 through 135 above as if
same were fully set forth at length herein.

137.    The acts and conduct of Defendants as stated above where Plaintiff was subjected to
racial and gender motivated harassment and hostile work environment was a violation of the
PHRA.

138.    Defendants McCall, Sladek and Cuthbert as stated above aided and abetted in the racial
and gender motivated harassment and hostile work environment of the Plaintiff.

139.    As a direct and proximate result of the said discriminatory practices of Defendants in violation of the PHRA, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, as well as mental anguish, emotional distress, humiliation, and damage to reputation.

## COUNT SIX – PHRA VIOLATIONS – RETALIATION
## PLAINTIFF V. DEFENDANTS

140.    Plaintiff incorporates by reference all allegations in paragraphs 1 through 139 above as if the same were fully set forth at length herein.

141.    The acts and conduct of Defendants as stated above where Plaintiff was subjected to adverse actions by after complaining and or opposing race and religious discrimination were violations of the PHRA.

142.    Defendants McCall, Sladek and Cuthbert aided and abetted the retaliatory actions taken against Plaintiff by the City.

143.    As a direct and proximate result of the said retaliatory practices of Defendants, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, and interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully demands judgment against Defendants and request that this Honorable Court:

A.    Enter judgment against Defendants and award Plaintiff back pay, front pay, loss of income, loss of benefits, pre and post judgment interests, costs of suit, liquidated damages, compensatory damages to make Plaintiff whole for all past and future emotional upset, mental anguish, humiliation, loss of life pleasures, loss of self-esteem

and all pain and suffering arising from the discriminatory and retaliatory conducts of Defendants, punitive damages against the individual Defendants Chief McCall, Deputy Chief Scott Sladek and Lt. George Cuthbert, attorneys' fees and expert witness fees as permitted by law.

B. Award such other equitable relief, as the Court may deem necessary and just, including but not limited to an Order to make whole.

C. Declaring that the acts and practices complained of herein violate the Civil Rights Act, 42, U.S.C. Section 1983 protection against race and gender discrimination and retaliation for protected activities based on race and gender.

D. Declaring that the acts and practices complained of herein violate the 14th Amendment of the United States Constitution protections against race and gender discrimination and retaliation for protected activities based on race and gender.

E. Declaring that the acts and practices complained of herein violate the PHRA protections against race and gender discrimination and retaliation for protected activities based on race and gender.

F. Enjoining and restraining the acts and practices complained of herein

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all factual issues in this matter.

Respectfully submitted,

Olugbenga O. Abiona, Esquire
ABIONA LAW PLLC
P.O. Box 3326
Cherry Hill, NJ 08034
(215)625-0330

Dated: August 14, 2023