**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IYANA FERGUSON                                                          :
                                                                       :          CIVIL ACTION
                                                                       :          No.: 23-cv-03134-JMY
                                        Plaintiff                      :
                          vs.                                          :
CITY OF PHILADELPHIA                                                   :
DEPUTY CHIEF SCOTT SLADEK,                                             :
LT. GEORGE CUTHBERT, and                                              :
EMS CHIEF MARTIN MCCAll                                                :
                          Defendants                                   :

## AMENDED COMPLAINT AND JURY TRIAL DEMAND

### I.          INTRODUCTION

1.          This action for monetary damages and other appropriate relief is brought by Plaintiff to

redress violations by Defendants City of Philadelphia (hereinafter "City"), Deputy Chief Scott

Sladek, and Lt. George Cuthbert, rights secured to Plaintiff by the laws of the United States of

America and the Commonwealth of Pennsylvania.

2.          This action arises under the Civil Rights Act 42 U.S.C. §1981, which prohibits

discrimination on the bases of race, and retaliation by employers and any person because of

complaints of race discrimination, and is brought by Plaintiff to redress arbitrary, malicious,

reckless, improper, unlawful, willful, and deliberate discrimination and retaliation by

Defendants.   This action also arises under Title VII of the Civil Rights Act 42 U.S.C. 2000e et

seq. against the City of Philadelphia.

3.          This action also arises under the PHRA which prohibits discrimination on the bases of

race and religion, and retaliation by employers and any person because of complaints of race and

or gender discrimination, and is brought by Plaintiff to redress arbitrary, malicious, reckless,

improper, unlawful, willful and deliberate discrimination and retaliation by Defendants. Plaintiff

1

has exhausted her administrative remedies under PHRA as it has been over one year since she

dual filed her administrative complaints with the EEOC and PHRC.

4.      This action also arises under the Civil Rights Act 42 U.S.C. Section 1983 for the

violation of Plaintiff's Constitutional and federal law rights by Defendants, acting under color of

state law.

5.      On or about September 23, 2021, Plaintiff dual filled her Charge of Discrimination

against Defendants with the EEOC and PHRC . On or about October 6, 2022, Plaintiff dual filed

her Amended Charge of Discrimination against Defendants under Title VII and the PHRA;

Charge No. 530-2021-05269.

6.      On June 28, 2023, the EEOC entered a Determination of probable cause against the City

of Philadelphia finding that the City violated Plaintiff's rights under Title VII of the Civil Rights

Act. violated Title VII.  The EEOC determined that "Evidence of record indicates that between

in or around May 2021 and continuing until the present, the Charging Party has been subjected to

harassment, different terms and conditions of employment, and subjected to disparate

assignments based on her race (Black), color, sex (Female) and in retaliation for engaging in a

protected activity…" See Exhibit A attached hereto. Conciliation of Plaintiff's claims against the

City by the EEOC has failed. On November 27, 2023, Plaintiff was issued her right to sue notice

by the United States Department of Justice, a copy of which is attached hereto.

**II.**                          **JURISDICTION**

7.      Federal court jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1343.  The Court

also has supplemental jurisdiction over Plaintiff's state law claims.

III.             **VENUE**

8.       Venue is proper pursuant to 28 U.S.C. § 1391, as the incidents alleged herein occurred within the Eastern District of Pennsylvania.

IV.             **PARTIES**

9.       Plaintiff Iyana Ferguson is an adult citizen of the United States, who resides in the City of Philadelphia.

10.      Plaintiff is black and African American by race and a female.

11.      Defendant City of Philadelphia, (hereinafter "City") is a municipality constituted under the laws of the Commonwealth of Pennsylvania with its offices located at City Hall, Philadelphia, Pennsylvania.

12.      Individual Defendants, Chief Martin McCall, Deputy Chief Scott Sladek and Lt. George Cuthbert are supervisory Fire Officers who at all relevant place and time in this matter were employed with the City of Philadelphia Fire Department. These individual defendants are being sued in their individual capacities.

13.      At all times material to this case all the individual Defendants listed above were acting under color of state law.

14.      On or about May 5, 2015, Plaintiff started working for the City as an EMT, assigned to Medic 28, Engine 19, located at 300 East Chelton Avenue, Philadelphia PA.

15.      On or about May 31, 2021, Plaintiff was sitting at Einstein hospital in the truck. ES10, Lt. Donahue approached Plaintiff and stated that she received a phone call about Plaintiff's hair.

16.      Plaintiff told Lt. Donahue that she just got braids done and they hurt and that's why she had a ponytail in but didn't have it in a bun. Plaintiff then put her hair in a bun. Lt. Donahue was satisfied with Plaintiff putting her hair in a bun and left.

3

17.     Thereafter, Medic 28 received a message over the CAD (computer system) stating to go out of service to the station and they drove back to the station.

18.     After Plaintiff got back to the station, Deputy Chief Scott Sladek (W/M) brought Plaintiff into the office around 10pm to discuss Directive 13; Plaintiff's Captain level supervisor Capt. McDaviett was also present in Sladek's office but did not address Plaintiff.

19.     It was unusual for a Deputy Chief supervisor to verbally reprimand an employee. Sladek should have reported any issue to Plaintiff's first level supervisor, Capt. McDaviett, to address the issue with Plaintiff.

20.     Defendant Sladek asked Plaintiff if she was aware of the directive . Plaintiff responded that she was not. Once Sladek defined the directive and mentioned the length of Plaintiff's braids, Plaintiff indicated she was aware of the policy and explained why her braids were below the required limit. Defendant Sladek asked why he had to keep bringing this to Plaintiff's attention. Plaintiff told him that day was the first time she had heard of this – this was not a repeat incident that occurred on another date.

21.     During the conversation Sladek became angry asking Plaintiff, and then threatened Plaintiff stating that Plaintiff was on "thin ice" and that if Plaintiff had another violation she was "out of here." Sladek threatened to have Plaintiff's employment terminated.

22.     However, Directive 13 was not enforced at the firehouse by Defendants; other employees, mostly Caucasian males, were routinely dressed out of code in violation of Directive 13, for example –they wear hoodies, shorts and sneakers.  They routinely dress out of code both at the firehouse and out on calls, but were not reprimanded by Sladek.   But because Plaintiff is a black female she was threatened with a reprimand by Sladek.

23.    Plaintiff later learned that the very next day Sladek contacted Fire Paramedic Deputy
Chief Jeremiah Laster and had Plaintiff transferred out of the fire house the entire next tour. This
was harassment and disparate treatment of Plaintiff because of her race and gender.

24.    Plaintiff was being treated differently than the white and male employees in the firehouse
house by Sladek.

25.    Plaintiff's next day on tour was June 5, 2021, Plaintiff came into work around 06:58 am.
The men at the station stated that Sladek was sitting at the watch desk waiting for Plaintiff to
come in, and as a result Plaintiff did not enter the station; she stayed outside.

26.    Lt. Anderson then walked outside and told Plaintiff that Sladek said Plaintiff's bun was
too high on her head and her fire helmet couldn't fit on.   Lt. Anderson stated that Plaintiff
needed to come back to his office showing him that her helmet can fit on.  Plaintiff was not
wearing an helmet at the time, and helmets are only worn when responding to a fire scene.

27.    Plaintiff adjusted her bun and put it in a low bun. Lt. Anderson then stated that according
to Sladek, he's still unsatisfied with Plaintiff's bun. He stated Plaintiff's bun is more than two
inches thick and that's inexcusable per the protocol. Plaintiff asked Lt. Anderson if he wanted
Plaintiff to cut her hair, he shrugged his shoulders. Lt. Anderson then stated that Deputy Chief
Sladek called ES12, Lt. Dawn Jones, to come and speak to Plaintiff about her hair. Plaintiff
asked Lt. Anderson why Lt. Jones was coming from a far distance and not Plaintiff's ES10
officer. Lt. Anderson stated he did not know. Plaintiff told Lt. Anderson that she wanted to wait
for her union rep and the EAP before speaking with Lt. Dawn.

28.    When Lt. Dawn Jones arrived, and **Lt. Jones had a huge bun on the top of her head**.

29.    Lt. Jones is a white woman with long blonde hair.

5

30.    Lt. Jones walked into Deputy Chief Sladek's office and closed the door. Lt. Jones then came outside and asked Plaintiff if she could speak to her upstairs in the officer's office. Plaintiff stated she did not feel comfortable and would like to wait for her union rep.

31.    Once Ana (LNU) from the EAP came and Plaintiff's union rep came, they went into the office to discuss what happened. The union rep spoke to Deputy Chief Scott Sladek. The union rep then came back into the room with Plaintiff and stated that the Chief said as long as Plaintiff was in uniform, he will leave Plaintiff alone.  The union rep said off record the Chief said he is going to continue to come after Plaintiff.  Plaintiff told the union representative that the Chief had been harassing her and continues to harass her. About 15 minutes later Plaintiff asked to be excused and went home stressed. These supervisors never treated the Caucasian and male officers in this harassing manner.

32.    Lt. Jones was not told to adjust her huge bun so it would fit within her helmet, like Plaintiff was being harassed by Deputy Chief Sladek.

33.    On August 31, 2021, Plaintiff worked overtime at Medic 6 on the C platoon, located at 9839 Bustleton Avenue, Philadelphia and got to work around 4:50 pm.  Plaintiff was assigned 5 p.m. to 7 a.m.

34.    Plaintiff went into the station to the Engine Officer's office to report for duty and gave her payroll number and name for overtime to Lt. George Cuthbert (Caucasian male) Engine 62/C.

35.    Plaintiff walked back outside to her car and waited for the medic unit to return.

36.    Once the medic unit returned Plaintiff exited her vehicle and walked over to Medic 6. Plaintiff sat in the truck until they got a run. Medic 6 had about 3 runs on that shift.

37.    Around 11:30 pm Medic 6 was back at the station and Plaintiff was sitting in the truck and kept scratching her arm. She then got out of the truck and asked her partner FSP Selby to look at the back of her arm and see if there was anything there. He said he saw bites and red dots. Plaintiff walked back to the truck and **saw bed bugs** throughout her driver's side seat in the creases of the chair. FSP Selby said he was getting bitten by something too, but he didn't know it was bed bugs.

38.    Plaintiff then went inside the station and reported the incident to Lt. George Cuthbert. He came outside to look at the chair and he saw the bed bugs too. He went back inside to make a phone call. He came back outside and told Plaintiff to go to Jeanes Hospital to decontaminate.

39.    Plaintiff told Lt. Cuthbert that she was allergic to bed bugs and needed to go home because she had to take Benadryl and couldn't drive after taking the medication.

40.    Lt. Cuthbert replied, "Don't bring that shit from Engine 19 over here, you're going to Jeanes". Lt. Cuthbert had worked at Engine 19, Plaintiff's regular work location.

41.    Plaintiff repeated that she needed some medicine and could not drive once she took Benadryl.

42.    Lt. Cuthbert stated, "I don't give a fuck get it at the hospital."

43.    Plaintiff stated, "No, I need you to make a phone call because I cannot stay at work after I take Benadryl."

44.    Cuthbert replied, "**You little Cunt you're going to Jeanes hospital**."

45.    Plaintiff replied that she was not getting back in that truck with bed bugs that she was allergic to but needed to go home.

46.    Lt. George Cuthbert then walked into the station and then walked outside to the parking lot and called FSP Marvin Staton, M16/C.

47.    Plaintiff hysterically told FSP Staton what just happened.

48.    Lt. George Cuthbert came outside and yelled at Plaintiff stating, "**Come get the fucking phone now**."

49.    Plaintiff told him she was not coming inside because she was scared to walk over there with his aggressive behavior towards her.

50.    Lt. Cuthbert kept yelling at Plaintiff to come inside.  But, once Plaintiff started walking towards the front of the station, Lt. Cuthbert threw the phone at Plaintiff, hitting Plaintiff in her stomach, and Plaintiff tossed the phone back at him, and Cuthbert yelled, "**Oh you little cunt**" and walked back into the station.

51.    Plaintiff then said hello to the person on the phone and ES Lt. Manny Cartagena stated, "I'm on my way right now".

52.    Plaintiff went into the station and gave the firefighter at the watch desk the phone. Lt. George Cuthbert stated to Plaintiff, "**Get the fuck out of my station**."  Plaintiff responded, "No."

53.    Lt. Cuthbert stated, "**Get the fuck out of my station now, you little fat black cunt bitch**", and he ran towards Plaintiff with his hands up as if he was going to choke Plaintiff. The ladder officer grabbed Lt. Cuthbert and pushed him into his office.

54.    Plaintiff walked outside and called FSP Staton back crying hysterically, coughing, and vomiting. Staton advised Plaintiff to try to calm down. Plaintiff calmed down and walked back into the station to the Ladder officer's office.  Plaintiff explained to the Ladder Officer that she got bit by bed bugs, that she was allergic to them and needed to take Benadryl, and therefore could not stay at work and drive after taking Benadryl.

8

55.     Plaintiff asked the ladder officer why he couldn't call for additional help for Plaintiff when another Lt. just attacked her. The ladder officer just looked at Plaintiff but didn't say anything. Plaintiff walked away and walked towards the parking lot and started crying hysterically again; she began to have difficulty breathing.

56.     FSP Selby noticed CP having difficulty breathing and brought over an albuterol treatment for her asthma attack.

57.     While Plaintiff was taking the albuterol treatment Lt. Manny pulled up.

58.     Lt. Manny walked over to Plaintiff and explained to Plaintiff that she needed to go to the hospital for her breathing difficulty.

59.     Plaintiff told LT Manny that she really wanted to speak with the EAP, a union rep and a Chief about what just transpired.

60.     Plaintiff told Lt. Manny that this Engine Officer, Lt. Cuthbert used to harass her when he used to be at Engine 19.  ES Officer Lt. Manny suggested Plaintiff should go to the hospital and a Chief will come to the hospital. Plaintiff agreed and a medic unit came to the station and took Plaintiff to Nazareth Hospital Emergency Room .

61.     While in the hospital, the attending physician told Plaintiff that she was no longer wheezing and did not need another treatment. The doctor looked at Plaintiff's right arm and gave her Benadryl with a prescription to continue to use it every 4 hours until the swelling and hives went away.

62.     Plaintiff's mom, Catherine Muhammad, arrived at the hospital.

63.     Deputy Chief Jared Jacobson eventually arrived at the hospital and Plaintiff reported to Deputy Chief Jacobson the sexual and racial harassment and hostile work environment she was subjected to by Lt. Cuthbert.

64.    Another Chief arrived at the hospital and took Plaintiff's report.

65.    Plaintiff told this other Chief what happened and the harassment she had been going through at her station Engine 19, and complained of the ongoing harassment, retaliation, sexism and racism.

66.    After having conversations with the two Chiefs with her mother in a private room, Plaintiff was instructed to go home, and Plaintiff's mother took Plaintiff to her vehicle.

67.    Plaintiff was supposed to work overtime at Medic 10 night shift the next day on September 1, 2021, but it was canceled by the City, and her name was taken off QUOTAS; the scheduling system. Plaintiff found out about this from FSP Marvin Staton.

68.    Plaintiff **lost 12 hours of over-time on September 1, 2021, in retaliation for complaining of race and gender harassment and hostile work environment against her superior officers at Philadelphia Fire Department.**

69.    On September 23, 2021, FSP Staton called Plaintiff and told her Plaintiff was "detailed" to Medic 22, located at 1323 West Cambria Street, Philadelphia, PA 19132, from September 25-28, 2021. This was not Plaintiff's regular work location and it was an inconvenient location for Plaintiff. Plaintiff called ES14 (which is Scheduling) and talked to Capt. Stalling-Geter.

70.    Capt. Geter told Plaintiff, that ES1, Deputy Chief Laster told Geter that Plaintiff was detailed out of her regular station but didn't tell Plaintiff the reason for this "detail".

71.    Plaintiff then called her regular workstation and talked to Lt. Kevin Higgins, who told Plaintiff that ES3 and ES14 told him that they got a memo from ES1, Deputy Chief Laster detailing Plaintiff, but gave no reason for the detail.

72.    Meanwhile the City assigned another FSP from another station to work Plaintiff's regular tour at Medic 28 and paid that replacement over-time for working Plaintiff's tour at Medic 28.

73.     Plaintiff asserts that this involuntary detail of Plaintiff to another station for her September 25-28, 2021, tour was part of the continuing retaliatory harassment and hostile work environment Defendants have subjected her to since Plaintiff engaged in protected activity under Section 1981, Title VII and the PHRA by opposing and complaining about these supervisory officers' race and gender motivated harassment and hostile work environment.

74.     On September 27, 2021, Plaintiff filed her Charge of Discrimination against the City, and immediately thereafter, the City was notified by the EEOC of Plaintiff's claims.

75.     However, the retaliatory actions by the City and its officials did not stop but was escalated to false allegations of directive violations against Plaintiff with the intent to subject her to unwarranted disciplinary actions.

76.     On December 8, 2021, Deputy Chief Scott Sladek confronted Plaintiff with false allegations that on that same day at 7:00 p.m., Plaintiff was instructed by Capt. Kareem Brown to "square away" her hair bun, because it was allegedly still below her collar.

77.     This allegation by Deputy Chief Sladek was false.

78.     Sladek then alleged that about 20 minutes later he observed Plaintiff's hair still down and now extended below her "belt-line".

79.     Again, this was a false allegation by Sladek.

80.     Deputy Chief Scott Sladek was one of the officials Plaintiff had complained was subjecting her to race discriminatory harassment and hostile work environment in her original Charge of Discrimination filed on September 27, 2021.

81.     As a result of Sladek's continuous harassment and retaliatory actions, Plaintiff took two days of stress leave which resulted in loss wages.

82.    Sladek has continued these retaliatory actions by now bringing false charges against Plaintiff.

83.    On Wednesday, June 28, 2023, after coming off her June 27, 2023 night shift, Capt. Gary Taylor came outside to the sidewalk where Plaintiff was standing and talking to her partner Kevin Selby.

84.    Capt. Taylor told Plaintiff that Chief Scott Sladek wanted him to talk to Plaintiff about her wearing slippers.

85.    Plaintiff told Capt. Taylor that she was off duty, was on her way home and that's why she was in slippers.

86.    Capt. Taylor replied that he didn't care, and Plaintiff should come into his office.

87.    Capt. Taylor told Plaintiff that his instructions were from Chief Sladek and that he would write Plaintiff up for wearing slippers and being out of uniform.

88.    Plaintiff again told Capt. Taylor that she was off duty, and that no one in the station on duty was in proper uniform.

89.    Capt. Taylor repeated that Plaintiff should come into his office.  Plaintiff told him she didn't feel comfortable going into his office, that she was off duty, and she was tired of being harassed by Chief Sladek and management because she had filed a complaint of race and gender harassment against Chief Sladek.

90.    Capt. Taylor walked away.

91.    The racially motivated harassment and hostile work environment, and retaliation by Defendants continued despite Plaintiff complaining to the City about the persistent harassment of Plaintiff by Deputy Chief Sladek.

92.     Plaintiff requested that she should not be assigned to work under Deputy Chief Sladek's chain of command because of the ongoing harassment, hostile work environment and retaliation, but the City continued to assign Plaintiff to work under Deputy Chief Sladek's chain of command and the hostile work environment continued.

93.     On or about August 2, 2023, after completing her shift, Plaintiff submitted her patients' charts into the City's computer system as she was required to do.

94.     Plaintiff was off duty and on vacation from August 3, 2013 and returned to work August 12, 2023.

95.     When Plaintiff returned to work on August 12, 2023, she was contacted on her phone by ES10 Lt. Clement and told that she had five open charts that needed to be sent in. Lt. Clement told Plaintiff to send the charts in and then he would come to Engine 19 to talk to Plaintiff.

96.     Plaintiff told Lt. Clement that before she went off duty on August 2, 2023 the charts were finished and she had sent them in through the computer link, but she would send them in again.

97.     After Plaintiff got off the phone with Lt. Clement her Engine Officer, Lt. Michael Weigand contacted Plaintiff and told her that Lt. Clement was coming to Engine 19 with paperwork because Plaintiff was being written up for open charts. Plaintiff told Lt. Weigand that she had sent the charts in on August 2, 2023, and there must have been come internet connection issue if what she sent in did not go through, but when she sent them in on August 2, 2023, it appeared to her that it went through..

98.     Lt. Weigand told Plaintiff that he tried to let **Lt. Clement and Capt. Murphy** know that Plaintiff was on vacation, but they stated that EMS Chief McCall ordered that Plaintiff should be written up.

99.    Per the directives, officers are supposed to be verbally warned first before any disciplinary action. But, Plaintiff was not verbally warned, and I've never had to sign any paperwork stating she was verbally warned about this.

100.    Chief McCall had previously flirted with Plaintiff on many occasions in the past when he was a captain at the warehouse, asking Plaintiff for her phone number, asking to take Plaintiff out on a date, and Plaintiff had always turned him down. McCall was sexually harassing Plaintiff.

101.    Chief Marttin McCall is the head of Philadelphia Fire Department EMS and has been aware of Plaintiff's EEOC charge and proceedings before the EEOC, and also participated in an EEOC mediation on behalf of the Fire Department.

102.    This is continuous harassment and retaliation taken against Plaintiff by Defendants.

103.    This is also Plaintiff being subjected to sexual harassment because she turned down the sexual advances of Chief McCall.

104.    The City has failed to take remedial action against the individual Defendants' harassment and hostile work environment of the Plaintiff because of her race and gender and because she engaged in protected activities.

105.    The City acquiesced in and condoned the racial and gender motivated harassment and hostile work environment of Plaintiff by these supervisory Fire Officials; harassment and hostile work environment that has continued and is still continuing since May 31, 2021.

V.            **STATEMENT OF CLAIMS**

**COUNT ONE- SECTION 1981 VIOLATION AND VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS VIA SECTION 1983 OF THE CIVIL RIGHTS ACT**

**Plaintiff v. Chief McCall, Deputy Chief Sladek and Lt. Cuthbert**

106.    Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 105 above as if same were fully set forth at length herein.

107.    The acts and conduct of Defendant Scott Sladek as stated above where he subjected Plaintiff to racially and gender motivated harassment and hostile work environment was a violation of Section 1981 of the Civil Rights Act and the 14th Amended of the United States Constitution relating to equal protection under the law.

108.    The acts and conduct of Defendant George Cuthbert as stated above where he subjected Plaintiff to racially and gender motivated harassment and hostile work environment was a violation of Section 1981 of the Civil Rights Act and the 14th Amended of the United States Constitution relating to equal protection under the law.

109.    The acts and conduct of Defendant McCall as stated above where he subjected Plaintiff to sexual harassment and hostile work environment was a violation of the 14th Amended of the United States Constitution relating to equal protection under the law.

110.    The acts and conducts of Defendants McCall, Sladek and Cuthbert as stated above where they subjected Plaintiff to racial and/or gender harassment and hostile work environment was a violation of Plaintiff's Constitutional rights under the Equal Protection Clause of the Fourteen Amendment by denying Plaintiff equal protection in her employment because of her race and/or gender, while acting under the color of state law.

111.    These claims are asserted against Chief McCall, Deputy Chief Sladek and Lt. Cuthbert in

their individual capacities, through Section 1983 of the Civil Rights Act because they were

acting under the color of state law when they engaged in these conducts and actions.

112.    As a direct and proximate result of the said discriminatory practices of Defendants

McCall, Sladek and Cuthbert in violation of Section 1981 and Plaintiff's Constitutional rights,

Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power,

loss of back pay, as well as mental anguish, emotional distress, humiliation, and damage to

reputation.

### COUNT TWO – 42 U.S.C. §1983 VIOLATIONS – RETALIATION
### Plaintiff v. Chief McCall, Deputy Chief Sladek and Lt. Cuthbert

113.    Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 112

above as if the same were fully set forth at length herein.

114.    The acts and conducts of Chief McCall, Deputy Chief Sladek, and Lt. Cuthbert as stated

above where Plaintiff was subjected to adverse actions by these individual Defendants after

Plaintiff complained of and/or opposed race and gender motivated discrimination, were

violations of the Civil Rights Act, 42 U.S.C. §1981 and Plaintiff's Constitutional rights, which

are being asserted against these individual Defendants via Section 1983 of the Civil Rights Act.

115.    As a direct and proximate result of the said retaliatory practices of Chief McCall, Deputy

Chief Sladek and Lt. Cuthbert, Plaintiff has sustained loss of wages and earnings, loss of

benefits, loss of future earning power, loss of back pay, front pay, and interest due therein as well

as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT THREE – SECTION 1983 VIOLATION
## RACE AND GENDER DISCRIMINATION
## PLAINTIFF V. CITY OF PHILADELPHIA

116.    Plaintiff incorporates by reference all allegations alleged in paragraphs one 1 through 115

above as if same were fully set forth at length herein.

117.    Defendant City of Philadelphia violated Plaintiff's Constitutional rights under the Equal

Protection Clause of the Fourteen Amendment by denying her equal protection in her

employment because of her race and gender, while acting under the color of state law.

118.    The City subjected Plaintiff to race discrimination in violation of the Civil Rights Act, 42

USC Section 1981, while acting under color of state law.

119.    The acts and conducts of the Defendants as stated above where Plaintiff was subjected to

race and gender harassment and hostile work environment in violation of Plaintiff's

Constitutional rights of equal protection while acting under color of state law are violations of

the Civil Rights Act 42 USC Section 1983.

120.    Plaintiff complained to the City through its Fire Commissioner about the race and gender

discriminatory conducts of these individual Defendants, however, the City failed to take remedial

action against these individual Defendant, but the harassment and hostile work environment

against Plaintiff continued and persisted.

121.    The acts and conducts of the Defendants as stated above show that the City was

deliberately indifferent to and acquiesced in the violations of Plaintiff's Constitutional rights to

be free from race discrimination and rights under the Civil Rights Act, Section 1981.

122.    The acts and conduct of Defendants stated above demonstrate that the City has a policy,

practice and/or custom of race and gender discriminatory practices.

123.    The City, through its Fire Commissioner also violated Plaintiff's Fourteenth Amendment rights by directing, participating in, and /or condoning the unlawful racial and gender motivated actions against Plaintiff by the Individual Defendants and other supervisory officials.

124.    The City, through its Fire Commissioner failed to properly train, supervise and discipline Defendants McCall, Sladek and Cuthbert, which led to the racial and gender harassment of Plaintiff by these individual Defendants.

125.    The acts and conducts of the City as stated above are violations of the Civil Rights Act 42 U.S. C. Section 1983.

126.    As a direct and proximate result of the City's violation of the Civil Rights Act, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, and interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

### COUNT FOUR – SECTION 1983 VIOLATION-RETALIATION
### PLAINTIFF V. CITY OF PHILADELPHIA

127.    Plaintiff incorporates by reference all allegations in paragraphs 1 through 126 above as if same were fully set forth at length herein.

128.    Plaintiff exercised her Constitutional rights by opposing Defendants' unlawful conducts, and complaining to authorities in the City's Fire department about been subjected to racial and gender discriminatory actions.

129.    After complaining to the City and the EEOC of been subjected to discriminatory conducts, Plaintiff was subjected to retaliatory actions by Defendants for engaging in protected activities under the Constitution and under a federal law, the Civil Rights Act, Section 1981.

130.    The acts and conducts of the City through its Fire Department under Fire Commissioner as stated above where Plaintiff was subjected to adverse employment actions after complaining

18

of and/or opposing race and gender discrimination are violations of the Civil Rights Act 42 U.S.
C. Section 1983.

131.    The City was deliberately indifferent to the violations of Plaintiff's Constitutional rights
and rights under a federal statute to be free from retaliation.

132.    The City has a policy, practice and custom of retaliating against its employees for
complaining about race and/or gender discriminatory practices.

133.    The City violated Plaintiff's First Amendment rights by directing, participating in, and /or
condoning the unlawful retaliatory actions against Plaintiff.

134.    The acts and conducts of the City as stated above are violations of the Civil Rights Act 42
U. S. C. Section 1983.

135.    As a direct and proximate result of said violation of the Civil Rights Act, Plaintiff has
sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back
pay, front pay, and interest due therein as well as mental anguish, emotional distress,
humiliation, and damages to reputation.

**COUNT FIVE- PHRA VIOLATION**
**RACE AND GENDER DISCRIMINATION**
**PLAINTIFF V. ALL DEFENDANTS**

136.    Plaintiff incorporates by reference all allegations in paragraphs 1 through 135 above as if
same were fully set forth at length herein.

137.    The acts and conduct of Defendants as stated above where Plaintiff was subjected to
racial and gender motivated harassment and hostile work environment was a violation of the
PHRA.

138.    Defendants McCall, Sladek and Cuthbert as stated above aided and abetted in the racial
and gender motivated harassment and hostile work environment of the Plaintiff.

139.    As a direct and proximate result of the said discriminatory practices of Defendants in violation of the PHRA, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, as well as mental anguish, emotional distress, humiliation, and damage to reputation.

## COUNT SIX – PHRA VIOLATIONS – RETALIATION
## PLAINTIFF V. DEFENDANTS

140.    Plaintiff incorporates by reference all allegations in paragraphs 1 through 139 above as if the same were fully set forth at length herein.

141.    The acts and conduct of Defendants as stated above where Plaintiff was subjected to adverse actions by after complaining and or opposing race and religious discrimination were violations of the PHRA.

142.    Defendants McCall, Sladek and Cuthbert aided and abetted the retaliatory actions taken against Plaintiff by the City.

143.    As a direct and proximate result of the said retaliatory practices of Defendants, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, and interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT SEVEN- TITLE VII VIOLATION-RACE AND GENDER DISCRIMINATION
### Plaintiff v. City of Philadelphia Only

144.    Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 143 above as if same were fully set forth at length herein.

145.    The acts and conducts of Defendant City of Philadelphia through its management and supervisory officials as stated above where Plaintiff was subjected to racially and gender

motivated harassment and hostile work environment was a violation of Title VII of the Civil

Rights Act.

146.    As a direct and proximate result of the said discriminatory practices of Defendant City of

Philadelphia, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future

earning power, loss of back pay, as well as mental anguish, emotional distress, humiliation, and

damage to reputation.

### COUNT EIGHT – TITLE VII VIOLATIONS – RETALIATION
### Plaintiff v. City of Philadelphia Only

147.    Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 146

above as if the same were fully set forth at length herein.

148.    The acts and conducts of Defendant City of Philadelphia through its management and

supervisory officials as stated above where Plaintiff was subjected to adverse actions after

Plaintiff complained of and/or opposed race and gender motivated discrimination, were

violations of Title VII of the Civil Rights Act.

149.    As a direct and proximate result of the said retaliatory practices of the City of

Philadelphia, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future

earning power, loss of back pay, front pay, and interest due therein as well as mental anguish,

emotional distress, humiliation, and damages to reputation.


**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully demands judgment against Defendants and request that this

Honorable Court:

A.      Enter judgment against Defendants and award Plaintiff back pay, front pay, loss of

        income, loss of benefits, pre and post judgment interests, costs of suit, liquidated

damages, compensatory damages to make Plaintiff whole for all past and future emotional upset, mental anguish, humiliation, loss of life pleasures, loss of self-esteem and all pain and suffering arising from the discriminatory and retaliatory conducts of Defendants, punitive damages against the individual Defendants Chief McCall, Deputy Chief Scott Sladek and Lt. George Cuthbert, attorneys' fees and expert witness fees as permitted by law.

B.  Award such other equitable relief, as the Court may deem necessary and just, including but not limited to an Order to make whole.

C.  Declaring that the acts and practices complained of herein violate the Civil Rights Act, 42, U.S.C. Section 1983 protection against race and gender discrimination and retaliation for protected activities based on race and gender.

D.  Declaring that the acts and practices complained of herein violate the 14th Amendment of the United States Constitution protections against race and gender discrimination and retaliation for protected activities based on race and gender.

E.  Declaring that the acts and practices complained of herein violate Title VII of the Civil Rights Act protection against race and gender discrimination and retaliation for protected activities based on race and gender.

F.  Declaring that the acts and practices complained of herein violate the PHRA protections against race and gender discrimination and retaliation for protected activities based on race and gender.

G.  Enjoining and restraining the acts and practices complained of herein.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all factual issues in this matter.

Respectfully submitted,

Olugbenga O. Abiona, Esquire
ABIONA LAW PLLC
P.O. Box 3326
Cherry Hill, NJ 08034
(215)625-0330

Dated: December 4, 2023



**U.S. Department of Justice**

Civil Rights Division

KC:MLB:KLF
DJ 170-57-0

*Employment Litigation Section – 4CON*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*
*www.usdoj.gov/crt/emp*

### NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL                                                                                November 27, 2023

Ms. Iyana Ferguson
c/o Olugbenga Abiona, Esquire
Abiona Law Office
P.O. Box 3326
Cherry Hill, NJ 08034

                              Re:     Iyana Ferguson v. City of Philadelphia, Fire
                                          Dept., et al., EEOC Charge No. 530-2021-05269

Dear Ms. Ferguson:

          Because you filed the above charge with the Equal Employment Opportunity Commission (EEOC), and conciliation on this charge has failed, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq., against the above-named respondent. It has been determined that the Department of Justice will not file suit on the above-referenced charge of discrimination that was referred to us by the EEOC. This should not be taken to mean that the Department of Justice has made a judgment as to whether or not your charge is meritorious.

          You are hereby notified that conciliation in this matter was unsuccessful by the EEOC. If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.

          If you or your attorney have any questions concerning these matters or wish to inspect the investigative files, please feel free to address your inquiry to: Dilip Gokhale, Director, EEOC, Anthony J. Celebrezze Federal Building, 1240 E. Ninth Street, Ste. 3001, Cleveland, OH 44199.

                              Sincerely,

                              Kristen Clarke
                              Assistant Attorney General
                              Civil Rights Division

                    By:   *Meredith L. Burrell*

                              Meredith L. Burrell
                              Principal Deputy Chief
                              Employment Litigation Section

cc:     City of Philadelphia Fire Dept. c/o Lindsey Cordes
          Iyana Ferguson
          EEOC, Cleveland Field Office



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Cleveland Field Office**

AJC Federal Building
1240 East Ninth Street, Suite 3001
Cleveland, OH 44199
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
ASL Video Phone: 1-844-234-5122
Telephone: (216) 306-1120
FAX (216) 522-7395
Website: www.eeoc.gov

Charge Number: 530-2021-05269

Iyana Ferguson
510 Montour Street
Philadelphia, PA 19111



v.

City of Philadelphia Fire Department
240 Spring Garden St.
Philadelphia, PA 19123

## DETERMINATION

Under the authority vested in me by the Procedural Regulations of the Equal Employment Opportunity Commission (EEOC or the Commission), I issue on behalf of the EEOC the following determination as to the merits of the subject Charge filed under Title VII of the Civil Rights Act of 1964 (Title VII), as amended. All jurisdictional requirements for coverage have been met.

Charging Party alleges that Respondent subjected her to harassment, different terms and conditions of employment, and disparate assignments because of her race (Black), color, sex (Female) and in retaliation for engaging in a protected activity.

Respondent denies the allegations. Respondent asserts the Charging Party's hair was not in compliance with Respondent's Directive 13. Respondent acknowledges the Charging Party complained of disparate treatment related to Respondent's enforcement of Directive 13. Respondent states that on or about August 31, 2021, the Charging Party reported a verbal altercation between herself and the on-duty Lieutenant. Respondent asserts that detail assignments can occur at any time. Respondent denies the Charging Party suffered an adverse employment action.

Statements and documents obtained during the investigation support that Charging Party began her employment with the Respondent on or about May 5, 2015, and she is currently employed as an Emergency Medical Technician. Evidence of record indicates that between in or around May 2021 and continuing until the present, the Charging Party has been subjected to harassment, different terms and conditions of employment, and subjected to disparate assignments based on her race (Black), color, sex (Female) and in retaliation for engaging in a protected activity. The Charging Party opposed and complained of harassment and the Respondent failed to take immediate and appropriate corrective action.

Based on an analysis of the statements and documents provided, I have determined that the evidence establishes a violation of Title VII.

Upon finding reasonable cause that unlawful employment practices have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Conciliation is Respondent's opportunity to voluntarily remedy the unlawful employment practices found to have occurred. Ultimately, any conciliation agreement must be acceptable to the Commission. Forthcoming separately is a proposed conciliation agreement designed to remedy the unlawful employment practices found to have occurred in this Letter of Determination. Respondent is invited to respond to this proposal within 10 days of receipt.

If Respondent fails to engage in conciliation, or if the Commission determines, in its sole discretion, that conciliation has failed, I will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission:

_June 28, 2023_
Date

Dilip Gokhale
Director